UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| LEROY SMITH, DENNIS NASH, and ALFONSO GRANT<br><br>individually and on behalf of all other persons similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>BULLS-HIT RANCH AND FARM, THOMAS R. LEE, and RONALD UZZLE,<br><br>Defendants. | CIVIL ACTION<br><br>No. 3:12-cv-00449-MMH-TEM<br><br><u>CLASS ACTION</u> |

FIRST AMENDED COMPLAINT
FOR DAMAGES, DECLARATORY
<u>RELIEF, AND INJUNCTIVE RELIEF</u>

1. Plaintiffs Leroy Smith, Dennis Nash, and Alfonso Grant bring this action to redress illegal labor recruiting and employment abuses and human trafficking offenses committed against them by Defendant Ronald Uzzle, Thomas R. Lee, and Bulls-Hit Ranch and Farm ("Bulls-Hit").

2. In recruiting, hiring, and employing Plaintiffs and other migrant agricultural workers, as detailed in this First Amended Complaint, Defendants committed violations of the Migrant and Seasonal Agricultural Worker Protection Act ("AWPA"), 29 U.S.C. § 1801 *et seq.*, the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, Article X § 24 of the Florida Constitution, as implemented by the Florida Minimum Wage Act, Fla. Stat. § 448.110 *et seq.*, and the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1581.

3. Plaintiffs bring this action for damages suffered by them and other workers

victimized by Defendants, and for declaratory and injunctive relief to put an end to Defendants' unlawful practices and conduct.

## JURISDICTION

4. Jurisdiction is conferred upon this Court by 29 U.S.C. § 1854(a), this action arising under the AWPA; by 29 U.S.C. § 216(b), this action arising under the FLSA; by 18 U.S.C. § 1595, this action arising under the TVPRA; by 28 U.S.C. § 1337, this action arising under the Acts of Congress regulating commerce; by 28 U.S.C. § 1331, this action arising under the laws of the United States, and by 28 U.S.C. § 1367, providing supplemental jurisdiction over the state minimum wage claims.

5. This Court has supplemental jurisdiction over the claims arising under state law because these claims are so related to the federal claims that they form part of the same case or controversy.

6. The Court is empowered to grant declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

## VENUE

7. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and (c) and 29 U.S.C. § 1854(a).

## PARTIES

8. Plaintiffs Leroy Smith, Dennis Nash, and Alfonso Grant are adult migrant agricultural workers within the meaning of the AWPA, 29 U.S.C. § 1802(8)(A), in that, at all times relevant to this action, they were employed in agricultural employment of a seasonal or temporary nature and were required to be absent overnight from their permanent places of residence. At all times relevant to this action, Plaintiffs maintained their permanent places of

residence in Jacksonville, Florida.

9. At all times relevant to this action, Plaintiffs were engaged, as migrant agricultural workers, in the production of goods for sale in interstate commerce.

10. Defendant Uzzle is a resident of Elkton, St. Johns County, Florida. At all times relevant to this action, Defendant Uzzle has been a farm labor contractor within the meaning of the AWPA, 29 U.S.C. § 1802(7), in that Uzzle, in exchange for money, recruited, solicited, hired, employed, transported or furnished agricultural workers for agricultural employment. At all times relevant to this action, Defendant Uzzle has employed, or jointly employed with other agricultural employers, agricultural workers within the meaning of the AWPA, 29 U.S.C. § 1802(5), and the FLSA, 29 U.S.C. § 203(g).

11. Defendant Lee is a resident of Hastings, St. Johns County, Florida. Individually and/or through his ownership or control of Defendant Bulls-Hit, Lee is engaged in the production of vegetables for sale in interstate commerce. At all times relevant to this action, Lee was an agricultural employer within the meaning of the AWPA, 29 U.S.C. § 1802(2), in that he operated a potato farm and a packing shed and employed migrant or seasonal agricultural workers.

12. Defendant Bulls-Hit is a closely-held Florida corporation owned or controlled, in whole or in part, by Defendant Lee. At all times relevant to this action, Defendant Bulls-Hit was licensed and authorized to do business within the State of Florida, with a principal place of business in Hastings, St. Johns County, Florida, and was engaged in the production of vegetables for sale in interstate commerce. At all times relevant to this action, Defendant Bulls-Hit was an agricultural employer within the meaning of the AWPA, 29 U.S.C. § 1802(2), in that it operated a potato farm and a packing shed and employed other migrant or seasonal agricultural workers.

13. In 2009 and 2010, Defendant Uzzle furnished Defendants Lee and Bulls-Hit with

workers needed for the potato harvest seasons in those years. During the 2009 season, Plaintiff Nash was one of the workers Defendant Uzzle furnished to Defendants Lee and Bulls-Hit, and during the 2010 season, Plaintiffs Smith and Grant were among the workers Uzzle furnished to Lee and Bulls-Hit.

14. At various times in 2009 and/or subsequent years, Defendant Uzzle also employed Plaintiffs to work for agricultural employers other than Defendants Lee and Bulls-Hit.

## CLASS ACTION ALLEGATIONS

15. All claims set forth in the First, Second, and Fourth Claims for Relief are brought by Plaintiffs on behalf of themselves and all other similarly situated persons pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure.

16. With respect to the First Claim for Relief, Plaintiffs seek to represent a class consisting of all migrant agricultural workers, as defined by the AWPA, 29 U.S.C. § 1802(8)(A), who were members of Defendant Uzzle's labor crew and who worked for any of the agricultural employers, including Defendants Lee and Bulls-Hit, for whom Uzzle furnished workers at any time in 2009 and subsequent years.

17. With respect to the Second and Fourth Claims for Relief, Plaintiffs seek to represent a subclass of all migrant agricultural workers, as defined by the AWPA, 29 U.S.C. § 1802(8)(A), who were members of Defendant Uzzle's labor crew and who were jointly employed by Defendants Uzzle, Lee, and Bulls-Hit during the 2009 and 2010 potato harvest seasons in St. Johns County, Florida.

18. While the precise size of the class and subclass described above are known only to Defendants, they are believed to include at least 50 individuals who maintain their permanent residences throughout Florida and other states. The relatively small size of the individual claims

and the indigence of the class and subclass members make the maintenance of separate actions by each class member economically infeasible. Joinder of all class and subclass members is impracticable.

19.  There are questions of fact common to the above-described class and subclass. The common questions of fact include whether Defendant(s) provided class and subclass members at the time of recruitment with written disclosures of terms and conditions of employment, maintained payroll records showing all withholdings from wages and the purpose for each withholding, provided wage statements disclosing all withholdings from wages, and paid wages when due in compliance with the AWPA; and whether Defendant(s) paid minimum wages as required under Florida law.

20.  There are questions of law common to the above-described class and subclass, including whether the actions of Defendant(s) violated provisions of the AWPA and minimum wage requirements under Florida law; and whether any violations of the AWPA were intentional within the meaning of that Act. With respect to the subclass, the common legal questions also include whether Defendant Bulls-Hit employed Plaintiffs and other subclass members within the meaning of the AWPA and the minimum wage requirements under Florida law.

21.  Plaintiffs' claims are typical of those of the other class and subclass members, and these typical, common claims predominate over any questions affecting only individual members of the class and subclass. Plaintiffs have the same interests as do the other class and subclass members and will vigorously prosecute these interests on behalf of all of them. Plaintiffs' claims describe the employment and payment practices that were common to all members of the class and subclass, and each member was subjected to these practices.

22.  Plaintiffs' counsel has handled numerous class actions in the federal courts,

including serving as class counsel in over 25 class actions under the AWPA. Plaintiffs' counsel is prepared to advance litigation costs necessary to vigorously litigate the action.

23. A class action under Rule 23(b)(3) is superior to other available methods of adjudicating the controversy concerning Defendants' violations of the AWPA and violations of minimum wage requirements under Florida law, because, inter alia:

    a. The common issues of law and fact, as well as the relatively small size of the individual class members' claims, substantially diminish the interest of members of the class in individually controlling the prosecution of separate actions;

    b. Many members of the class and subclass are unaware of their rights to prosecute these claims and lack the means or resources to secure legal assistance;

    c. There has been no litigation already commenced against Defendants by class or subclass members to determine the questions presented in this action;

    d. It is desirable that the claims be heard in this forum since Defendants are subject to this Court's jurisdiction, and the actions giving rise to the claim occurred in this district;

    e. A class action can be managed without undue difficulty because Defendants have regularly committed the violations complained of herein, and are required to maintain detailed records concerning each class and subclass member.

## STATEMENT OF FACTS

### Facts Relating to Recruitment and Hiring

24. Defendants Lee and Bulls-Hit engaged Defendant Uzzle to recruit, hire, transport, and furnish workers to fill Lee's and Bulls-Hit's agricultural labor needs for the 2009 and 2010 potato harvests in St. Johns County, Florida. At all relevant times, Uzzle was authorized by Lee

and Bulls-Hit to do all things necessary, personally and through agents, to recruit, hire, transport, and furnish Lee and Bulls-Hit with such workers.

25. At all times relevant to this action, Defendant Uzzle also recruited, hired, transported, and furnished workers to fill agricultural labor needs of agricultural employers other than Defendants Lee and Bulls-Hit.

26. At all times relevant to this action, Defendant Uzzle regularly recruited and hired migrant agricultural workers at homeless shelters in inner-city areas such as in Jacksonville, Florida. In recruiting such workers, Uzzle sought out individuals in vulnerable and exploitable circumstances of destitution, homelessness, and drug addiction.

27. Plaintiffs were among the individuals recruited by Defendant Uzzle to work for Defendants Lee and Bulls-Hit and other agricultural employers. At the time of their recruitment by Defendant Uzzle, Plaintiffs were living in Jacksonville, Florida. They were destitute, homeless, and struggling with drug addiction.

28. In recruiting Plaintiffs and other workers, Defendant Uzzle promised regular hours of full-time work at wages of at least the minimum legal hourly wage. Uzzle further promised to provide workers with good housing and meals at a labor camp Uzzle operated, and to provide daily transportation between the camp and job-sites. Based on these and related promises, Plaintiffs and other workers accepted Uzzle's offers of employment.

29. Defendants did not provide Plaintiffs or the other workers he recruited with written statements of the terms and conditions of employment at the time of recruitment.

### The Labor Camp

30. Defendant Uzzle transported Plaintiffs and other workers he recruited to his labor camp near Elkton, Florida. At all times relevant to this action, this camp was owned or controlled by Uzzle and his agents.

31. At the labor camp, Plaintiffs were assigned bunks in the camp's main worker housing facility, called the "bullpen." The bullpen was a cinderblock structure that enclosed a

common living and sleeping area occupied by dozens of workers. The structure was dirty, infested with insects, and overcrowded, crammed with bunk beds on which the workers slept on soiled mattresses. Workers had access to a bathroom attached to the bullpen that normally had just one operable toilet and only one shower head, and which was kept in filthy and unsanitary condition.

32. While residing at the labor camp, Plaintiffs and the other workers were required to pay Defendant Uzzle for housing as well as meals supplied at the camp. Uzzle collected housing and meal charges on a weekly basis, taking the money from wages paid to the workers on their weekly paydays. Uzzle never allowed workers an option of obtaining their own housing or purchasing their own food. Plaintiffs and the other workers paid for camp-supplied meals, whether they consumed the meals or not; even if they supplied their own food, class members had no access to cooking facilities.

33. Plaintiffs and other workers recruited and hired by Defendant Uzzle were addicted to crack cocaine and/or other illegal drugs that caused them to desire and use the drugs on a daily basis. Uzzle knew of other such dependencies in his workers, as he purposely sought out workers with such dependencies when he recruited them.

34. Defendant Uzzle employed or engaged crew bosses or other associates who supplied the labor camp residents with crack cocaine, marijuana, beer, wine, hard liquor, cigarettes, and the services of prostitutes. Drugs were sold to workers on a daily basis, openly and in plain view of everyone at the camp.

35. During non-work hours, Defendant Uzzle spent a substantial amount of time at the camp, including at an office that he maintained in a trailer on the premises, and was in a position to observe the sales of drugs to the workers on a daily basis. Uzzle made no effort to disturb the sale of drugs at the camp. He either authorized or consented to the sales.

36. When, as frequently was the case, Plaintiffs or the other class members did not have cash to pay for camp purchases, Defendant Uzzle lent them money. Uzzle unlawfully

charged usurious interest rates of 100 percent on these loans and unlawfully required repayment of such loans and interest when workers received their weekly wages. Additionally, when workers were short on cash, the camp's dealers also sold drugs to workers on credit, to be repaid when workers received their weekly wages.

### Employment by Lee and Bulls-Hit

37.  Plaintiffs and other workers who Defendant Uzzle furnished to Defendants Lee and Bulls-Hit worked in crews assigned to grade and pack potatoes at Lee's and Bulls-Hit's potato packing shed near Hastings, St. Johns County, Florida. At all times relevant to this action, Plaintiffs and the other class members were supervised by a Bulls-Hit employee known to the workers as "Too Tall." Too Tall is believed to be Ronald Jones.

38.  Too Tall's supervision of Plaintiffs and the other workers furnished to Defendants Lee and Bulls-Hit extended to all aspects of the workers' daily job functions and activities, including instructing the workers when to start and stop work; keeping records of workers' time and attendance; assigning workers to specific job stations, duties, and responsibilities; and instructing workers on job performance and quality control requirements.

39.  In supervising the work of Plaintiffs and the other workers furnished to Defendants Lee and Bulls-Hit, Too Tall took instruction from other on-site supervisory or management employees of Defendants Lee and Bulls-Hit.

40.  In addition to supervising their work at the Bulls-Hit packing shed, Too Tall loaned money to Plaintiffs and the other workers furnished to Defendants Lee and Bulls-Hit. On a number of occasions, Defendant Uzzle provided money to Too Tall to lend to workers on Uzzle's behalf. In providing such loans to the workers, Too Tall unlawfully charged interest at the rate of 100 percent, and unlawfully required the loans and interest to be paid when workers received their weekly wages.

41.  Too Tall engaged in the above-described money lending activities openly and in plain view on the premises of Defendant Lee's and Bulls-Hit's packing shed, such that Lee and

Bulls-Hit knew or should have known about Too Tall's money lending activities.

### Defendants' Unlawful Claims Against Workers' Wages

42. Plaintiffs and the other workers employed by Defendants Uzzle, Lee, and Bulls-Hit were paid on a weekly basis. Workers were paid in the following manner during the 2009 and 2010 potato harvest seasons: On paydays at the end of each workweek, Too Tall distributed to the workers pay vouchers showing their hours worked and wages earned. Each worker signed his voucher, gave the voucher back to Too Tall, and in exchange was given cash in the amount stated in the voucher. However, rather than permitting the workers to keep all of their cash wages, Too Tall collected from them amounts that he claimed as repayment of loans and interest, and Defendant Uzzle required them to pay amounts that he claimed for housing, meals, and loans. At the labor camp, the camp's drug dealers required the workers to pay back credits claimed to be owed for drug purchases.

43. The workers could not avoid the above-described kickbacks of their wages to Defendant Uzzle and Too Tall. Uzzle and Too Tall collected such payments from the workers under threatening and coercive conditions. The collections took place under the watch of crew bosses employed by Uzzle, and workers were not permitted to leave their presence without having settled up with the claimants. Under these circumstances, Plaintiffs believed that refusal or failure to pay Uzzle or Too Tall would subject them to physical harm.

44. Regularly on or about the day before each weekly payday, Defendant Uzzle, Too Tall, and the camp's drug dealers met at the camp to discuss how much they were owed by the workers, and to coordinate as to amounts to be collected from the workers when they received their wages. These meetings provided Uzzle and Too Tall with detailed information regarding each other's lending activities and about drug sales at the camp.

### Human Trafficking and Racketeering Activities

45. Defendant Uzzle preyed upon Plaintiffs' drug addictions. Uzzle caused or

knowingly allowed the camp's dealers to supply Plaintiffs with drugs on a daily basis, further promoting their addictions. Plaintiffs' drug purchases consumed their earnings and placed them in mounting debt and financial dependence on loans and credits extended by Uzzle, Too Tall, and the camp's dealers.

46. Plaintiffs worked under coercive conditions as a result of their drug addictions and the constant indebtedness to Defendant Uzzle, Too Tall, and the camp's dealers. The workers were not free to leave the camp because (a) Uzzle controlled their only means of transportation to and from the isolated camp; (b) their psychological and physical dependencies on drugs prevented them from attempting to leave the camp; and (c) they feared physical reprisal if they attempted to leave the camp.

47. Defendant Uzzle and Too Tall established and cultivated a climate of intimidation and fear among the workers, including Plaintiffs. From stories told at the labor camp, Plaintiffs were well aware of the reputation of Uzzle, Too Tall, and their associates to physically harm or threaten to harm workers who failed to pay debts claimed against them, who attempted to leave camp without paying claimed debts, or who failed to perform their work assignments. Plaintiffs heard of instances in which workers were beaten if they did not pay debts or failed to work as required.

48. Defendants Lee and Bulls-Hit compensated Defendant Uzzle for providing the workers, including Plaintiffs, whom Defendants needed to perform potato grading and packing services. Uzzle knowingly benefitted and received value for having provided and obtained the labor of Plaintiffs under the coercive conditions described above.

49. Defendants Lee and Bulls-Hit benefitted and received value from the labor and services of Plaintiffs, whom they jointly employed with Defendant Uzzle. By employing Too Tall to supervise Plaintiff and the other workers, and by means of Too Tall's knowledge and participation in the physical, psychological, and financial coercion under which the workers labored, Lee and Bulls-Hit knew or should have known of the coercive conditions to which the

workers were subjected. Lee and Bulls-Hit thus knowingly benefited and received value from obtaining the services of the workers under such coercive conditions.

## FIRST CLAIM FOR RELIEF

### Class Action Under the AWPA Against Defendant Uzzle

50. On behalf of themselves and all other similarly situated workers ("class members"), Plaintiffs seek damages, declaratory relief, and injunctive relief from Defendant Uzzle's violations of the AWPA in connection with the recruitment, hiring, and employment of Plaintiffs and other class members to work for any of the agricultural employers, including Defendants Lee and Bulls-Hit, for whom Uzzle furnished workers in 2009 and subsequent years. These violations of the AWPA are further specified as follows.

51. Defendant failed to disclose in writing, at the time of recruitment, terms and conditions of the employment offered to Plaintiffs and other class members in violation of 29 U.S.C. § 1821(a).

52. Defendant did not provide Plaintiffs and other class members with written wage statements in compliance with 29 U.S.C. § 1821(d)(2), in that wage statements provided to the workers failed to disclose all itemized amounts taken from the workers' weekly wages.

53. Defendant failed to pay Plaintiffs and other class members their wages when due, in violation of 29 U.S.C. § 1822(a), as a result of having unlawfully taken kickbacks from the workers' weekly wages for amounts claimed for housing, meals, loans, and drug purchases.

54. Defendant failed to keep records for Plaintiffs and other class members as required by 29 U.S. C. § 1821(d)(1) and its attendant regulations, in that the deductions claimed for housing, meals, loans, and drug purchases were not reflected in Defendants' payroll records.

55. In view of the camp housing conditions described above at paragraph 31, Defendant failed to ensure that housing facilities provided to Plaintiffs and other class members were in compliance with federal and state safety and health standards as required by 29 U.S.C. § 1823(a).

56. Defendant's violations of the AWPA as set forth in this Claim were intentional within the meaning of the AWPA, 29 U.S.C. § 1854(c)(1), in that they were the natural consequences of Defendant's conscious and deliberate actions and occurred as a part of Defendants' regular business practices during the 2009 and 2010 potato harvest seasons.

57. As a result of Defendant's violations of the AWPA, Plaintiffs and other class members suffered damages.

### SECOND CLAIM FOR RELIEF
### AWPA Action on Behalf of Subclass Against Defendants Lee and Bulls-Hit

58. On behalf of themselves and all other workers jointly employed by Defendants Uzzle, Lee, and Bulls-Hit during the 2009 and 2010 potato harvest seasons ("subclass members"), Plaintiffs seek damages, declaratory relief, and injunctive relief from Defendants Lee and Bulls-Hit for violations of the AWPA in connection with the recruitment, hiring, and employment of Plaintiffs and other subclass members. These violations of the AWPA are further specified as follows.

59. Defendants failed to disclose in writing, at the time of recruitment, terms and conditions of the employment offered to Plaintiffs and other subclass members, in violation of 29 U.S.C. § 1821(a).

60. Defendants did not provide Plaintiffs and other subclass members with written wage statements in compliance with 29 U.S.C. § 1821(d)(2), in that wage statements provided to the workers failed to disclose itemized amounts taken from the workers' weekly wages for housing, meals, loan payments, and amounts claimed to be owed for drug purchases.

61. Defendants failed to pay Plaintiffs and other class members their wages when due, in violation of 29 U.S.C. § 1822(a), as a result of having unlawfully taken kickbacks from the workers' weekly wages for amounts claimed for housing, meals, loans, and drug purchases.

62. Defendants failed to keep records for Plaintiffs and other class members as required by 29 U.S.C. § 1821(d)(1) and its attendant regulations, in that the deductions claimed for housing, meals, loans, and drug purchases were not reflected in Defendants' payroll records.

63. Defendants' violations of the AWPA as set forth in this Claim were intentional within the meaning of the AWPA, 29 U.S.C. § 1854(c)(1), in that they were the natural consequences of Defendants' conscious and deliberate actions and occurred as a part of Defendants' regular business practices during the 2009 and 2010 potato harvest seasons.

64. As a result of Defendants' violations of the AWPA, Plaintiffs and other subclass class members suffered damages.

### THIRD CLAIM FOR RELIEF

#### Individual Actions Under the FLSA

65. Plaintiffs seek damages and declaratory relief from Defendants Uzzle, Lee, and Bulls-Hit for violations of the minimum wage provisions of the FLSA in connection with the employment of Plaintiffs at Lee's and Bulls-Hit's potato packing operations during the 2009 or 2010 potato harvest seasons in St. Johns County, Florida. In 2009, when Plaintiffs Nash was so employed, the applicable minimum wage was $6.55 per hour. In 2010, when Plaintiffs Smith and Grant were so employed, the applicable minimum wage was $7.25 per hour.

66. Defendants failed to pay Plaintiffs at least the applicable minimum wage for every hour worked during each workweek each of them was employed, in violation of 29 U.S.C. § 206 and its attendant regulations. These violations resulted from the unlawful kickbacks that Plaintiffs were required to pay for rent, meals, loans, and drug purchases. With respect to the violations during the 2009 potato harvest season, Defendants acted willfully in that they knew or should have known that the kickbacks were unlawful under the FLSA.

67. As a result, Plaintiffs suffered damages and are entitled to recover the amount of their unpaid wages and an equal amount in liquidated damages, as well as attorney's fees and the costs of this action, pursuant to 29 U.S.C. § 216(b).

### FOURTH CLAIM FOR RELIEF

#### Violations of State Minimum Wage Laws

68. On behalf of themselves and all other workers jointly employed by Defendants

Uzzle, Lee, and Bulls-Hit during the 2009 or 2010 potato harvest seasons in St. Johns County, Florida ("subclass members"), Plaintiffs seek damages, declaratory relief, and injunctive relief from Defendants' violations of Article X § 24 of the Florida Constitution, described as follows.

69. Defendants failed to pay Plaintiffs and other subclass members at least $7.21 for every hour worked during the 2009 potato harvest and at least $7.25 for every hour worked during each workweek during the 2010 potato harvest in which they were employed, in violation of Art. X § 24 (e) of the Florida Constitution. These violations resulted from the unlawful kickbacks that Plaintiffs and the other class members were required to pay for housing, meals, loans, and drug purchases.

70. As a result of Defendants' violations of the minimum wage provisions of Art. X § 24(e) of the Florida Constitution, Plaintiffs and other subclass members suffered damages and are entitled to recover the amount of their unpaid wages and an equal amount in liquidated damages.

## FIFTH CLAIM FOR RELIEF

### Human Trafficking Violations

71. Plaintiffs seek damages and declaratory and injunctive relief pursuant to the civil remedy provisions of the TVPRA, 18 U.S.C. § 1595, against Defendants Uzzle, Lee, and Bulls-Hit for their violations of the TVPRA, 18 U.S.C. § 1589 in connection with Defendants' recruitment, hiring, and employment of Plaintiffs during the 2009 and 2010 potato harvest seasons in St. Johns County, Florida.

72. Defendants obtained and provided the labor and services of Plaintiffs by means of serious harm or threats of serious harm to Plaintiffs and the other class members, and by means of a scheme, plan, or pattern intended to cause Plaintiffs to believe that if they did not perform the required labor or services, they would suffer serious harm, in violation of 18 U.S.C. § 1589(a).

73. The serious harm or threats of serious harm asserted against Plaintiffs included

physical and psychological harm from Defendants' promoting and furthering the drug addictions of the workers; psychological harm from instilling fear among the workers that they would not have access to the drugs needed to satisfy their dependencies if they did not provide labor and services to Defendants; financial harm from entrapping the workers in cycles of mounting and inescapable debt; and psychological harm from causing workers to believe that they would suffer physical harm if they did not pay their debts or if they did not provide labor and services to Defendants to work off their debts.

74. Defendants benefitted financially and received value from engaging in a venture to provide or obtain the labor of Plaintiffs by means of forced labor, and they did so knowingly or in reckless disregard of the fact that such labor and services were provided or obtained by such means, in violation of 18 U.S.C. § 1589(b).

75. As a result of Defendants' violations of the TVPRA, Plaintiffs suffered damages and are entitled to recover compensatory damages, punitive damages, reasonable attorney's fees, and the costs of this action.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court will enter an order:

a. Declaring that Defendants have intentionally violated the AWPA as set forth in the First and Second Claims for Relief;

b. Granting judgment under the AWPA in favor of Plaintiffs, individually and on behalf of all class members in the First Claim for Relief and on behalf of all subclass members in the Second Claim for Relief, and awarding Plaintiffs and all class and subclass members actual damages, or statutory damages of $500, whichever is greater (including pre-judgment and post-judgment interest) for each violation of the AWPA;

c. Declaring that Defendants have violated the FLSA as set forth in the Third Claim for Relief;

d. Granting judgment in favor of Plaintiffs on their claims under the FLSA as set

forth in the Third Claim for Relief, and awarding each Plaintiff his unpaid minimum wages as well as an equal amount in liquidated damages;

e. Declaring that Defendants have violated the Florida minimum wage laws as set forth in the Fourth Claim for Relief;

f. Granting judgment in favor of Plaintiffs, individually and on behalf of all subclass members, on their claims under the Florida minimum wage laws as set forth in the Fourth Claim for Relief, and awarding Plaintiffs and all others similarly situated their unpaid minimum wages as well as an equal amount in liquidated damages;

g. Declaring that Defendants have violated provisions of the TVPRA, as set forth in the Fifth Claim for Relief;

h. Granting judgment in favor of Plaintiffs against Defendants on claims brought under the TVPRA and awarding Plaintiffs actual and punitive damages;

i. Permanently enjoining the Defendants from further violations of the AWPA, Florida minimum wage laws, and trafficking offenses under the TVPRA;

k. Awarding Plaintiffs' counsel reasonable attorney's fees and costs of this action with respect to claims under the FLSA, the TVPRA, the Florida minimum wage laws, and the wage payment provisions of the AWPA; and

l. Granting such further relief as this Court deems just and equitable.

Respectfully submitted,

/s/ Gregory S. Schell
Gregory S. Schell (Florida Bar No. 287199)
Florida Legal Services, Inc.
Migrant Farmworker Justice Project
508 Lucerne Avenue
Lake Worth, FL 33460-3819
561-582-3921 (telephone)
561-582-4884 (facsimile)

greg@floridalegal.org

Weeun Wang
Farmworker Justice
1126 16th Street NW, Suite 270
Washington, DC 20036
202-293-5420 (telephone)
202-293-5427 (facsimile)
wwang@farmworkerjustice.org

**Attorneys for Plaintiffs**